MIDWEST TRANSFER CO. *v.* PORTERFIELD, COMMR.
EMERY TRANSPORTATION CO. *v.* PORTERFIELD, COMMR.

(Nos. 62083 and 62084—Decided July 11, 1967.)

Board of Tax Appeals, Department of Taxation, State of Ohio.

*Mr. Theodore K. High,* for appellants.

*Mr. William B. Saxbe,* attorney general, and *Mr. Edgar L. Lindley,* for appellee.

These causes and matters came on to be considered by the Board of Tax Appeals upon two notices of appeal filed herein by the appellants above named from two final orders of the Tax Commissioner dated June 24, 1966, wherein that official, in passing upon petitions for reassessment filed with him by the appellants under the provisions of Section 5728.10, Revised Code, confirmed two highway use tax assessments which he had previously made (September 10, 1964) against appellants in the following basic amount and for the periods noted:

| Case No. | Serial No. | Tax Return Period | Basic Assessment |
|---|---|---|---|
| 62083 | R 70215 | 10-1-1959 to 3-1-1962 | $17,717.56 |
| 62084 | R 70214 | 10-1-1959 to 3-31-1963 | 12,445.84 |

In each instance the final order provides that if payment of the basic assessments is not made within certain time limits and under certain conditions, then the basic assessments shall be increased by adding thereto the 15% penalty provided by Section 5728.10, Revised Code.

The notice of appeal from the final order of the Tax Commissioner, in each case, specifies the errors which appellants claim the Tax Commissioner made in the issuance of said final orders as follows:

"1. It is contrary to law in that it holds, in effect, that it is permissible under applicable statutes for the Tax Commissioner to make a 'test check' audit whereby one quarter is audited for Highway Use Tax purposes and a projection of results of the one quarter is made over other unaudited quarters for the purpose of assessment of the Highway Use Tax, notwithstanding that the taxpayer had adequate records, had filed the returns and paid the full tax for the period in question.

"2. It is contrary to law in that it purports to make, or affirms the purported making of, an assessment of the

Highway Use Tax based solely upon a projection of a 'test check' audit, notwithstanding that taxpayer had adequate records, had filed tax returns and paid the full tax for the period in question.

"3. It is contrary to law in that it holds that a purported assessment of Highway Use Tax made solely upon the basis of the projection of the results of a test check is not, after the passage of the statutory time, barred by the statute of limitations.

"4. It is contrary to law in that it holds that the specification in the petition for reassessment concerning errors in the audit should be denied because of lack of evidence, since, with the exception of the second quarter of 1960, the 'audit' and therefore the 'assessment' were based upon a projection of a test check and the Tax Commissioner had before him no evidence or information whatsoever upon which to base the purported assessment for the quarters not audited and Chapter 5728, Revised Code, provides no presumption of taxability.

"5. It is contrary to law in denying the petition for reassessment, in that the purported assessments (with the exception of that for one quarter) being done by projection of a 'test check' without any statutory authorization and without any other bases than the projection of the 'test check' were void *ab initio*.

"6. It is contrary to law in denying the petition for reassessment in that, except insofar as it made an assessment for the second quarter of 1960, the original purported assessment, being void *ab initio*, was not an 'assessment' within the meaning of the applicable statutes, except insofar as it makes an assessment for the second quarter of 1960, and an assessment at this time for the other quarters in question is barred by the terms of Section 5728.10, Revised Code."

The appeals were consolidated for hearing and disposition and the matter, as thus consolidated, was submitted to the Board of Tax Appeals upon the notices of appeal, the statutory transcript supplied by the Tax Commissioner,

the stipulation of facts filed herein by counsel for the parties under date of November 17, 1966, and the briefs filed by counsel.

The stipulation of facts reads as follows:

It is hereby stipulated and agreed by and between the attorneys for Midwest Emery Freight System, Inc., successor in interest to both Midwest Transfer Co. and Emery Transportation Co., appellants in the above-styled cases, and G. W. Porterfield, Tax Commissioner of Ohio, as follows:

"(1) That during the calendar quarter reporting periods covered by the assessments in issue the two appellant companies were separate corporations but operated on a cooperative basis.

"(2) That such records of said companies as existed were maintained at Chicago, Illinois, and the records of the two companies were at all times pertinent to these cases intermingled and mixed.

"(3) That the turnpike travel by both companies was charged to a single turnpike charge account in the name of Midwest Transfer Company, a. k. a. Midwest Transfer Company of Illinois.

"(4) That the personnel responsible for the preparation of the Highway Use Tax returns of both companies, in the preparation of all returns for the reporting periods included in the assessments here in issue, arbitrarily used 248 miles on many trips which crossed the state of Ohio, irrespective of the points of entrance and exit and irrespective of the routes traveled. In some instances this resulted in an erroneous underreporting of mileage; in other instances it resulted in an erroneous overreporting of mileage.

"(5) That the personnel responsible for the preparation of the Highway Use Tax returns for both companies, in the preparation of all returns for the reporting periods included in the assessments here in issue, computed Ohio Turnpike mileage from the companies' dispatcher's reports which purported to show turnpike gates entered and exited

on particular trips, notwithstanding that the turnpike charge account records revealed that said entrance and exit gates were not, in fact, used on all said trips. As a result, a great many such trips across Ohio were erroneously reported.

"(6) That the audit of the companies' records in this case was begun on April 16, 1962, at Chicago, Illinois. By August 15, examination of the records of both companies for the second quarter of 1960 had been completed and at or about said time the officials of both companies required the Tax Commissioner's personnel to vacate the premises and space allotted for the making of the audit by September 1, 1962.

"(7) That after extensive cross-checking and verification of credits claimed by the appellants to be applicable to the second quarter of 1960, an amount was determined to be due for said quarter. The percentage of error in the mileages reported at the various rates on the appellants' Highway Use Tax returns for said quarter was also determined. The appellants herein do not contest the amount determined to be due for the second quarter of 1960 and do not contest the accuracy of the percentage-of-error factors finally determined with respect to their returns for said quarter.

"(8) That it was proposed that the appellants amend their returns for all quarters including and subsequent to the fourth quarter of 1958, by the application of said percentage-of-error factors. Pursuant to conversations with officials of the appellants, at which time appellants were not represented by counsel, and recognizing that said procedure would obviate the necessity of further audit and assessments, the Tax Commissioner's examiners prepared amended returns accordingly and submitted same to appellants for signature and filing. However, at the time of such submission, upon the advice of counsel, the appellants declined to sign and file said amended returns and further objected, by counsel, to any assessment for the fourth quarter of 1958 and the first three quarters of 1959 on the ground

that assessment for said quarters was then barred by Section 5728.10, Revised Code.

"(9) That the assessments in issue, in case No. 62083 being for the period October 1, 1959, to March 1, 1962, and in case No. 62084 being for the period October 1, 1959, to March 31, 1963, were thereafter issued, based upon the detailed audit of the appellants' records for the second quarter of 1960 and the percentage of error in the appellants' returns for said quarter, as determined therefrom, which was projected and applied to the appellants' returns for the other reporting periods included in the assessments, to form the basis of the assessments for said periods.

"(10) That the records and books of the appellants for quarters other than the second quarter of 1960 were not audited by the appellee.

"(11) That it is agreed that these cases be submitted to the Board of Tax Appeals upon the foregoing stipulation of facts, the statutory transcript of the Tax Commissioner as certified to the Board of Tax Appeals pursuant to Section 5717.02, Revised Code, and briefs of counsel for the parties to be filed within times to be set by the Board of Tax Appeals."

From the testimony, evidence and stipulation it appears that sometime in April 1962 the Tax Commissioner's highway use tax examiners arrived at appellants' office in Chicago, Illinois, for the purpose of making an audit of appellants' books and records to determine appellants' highway use tax (hereinafter referred to as HUT) liability, if any.

In August 1962 the tax examiners completed a detailed audit of the applicable books and records of both appellants for the second quarter of the calendar year 1960 and found that certain errors had been made by appellants in their HUT returns for the second quarter of the calaendar year 1960.

They found that for the second quarter of 1960 the appellant, Midwest Transfer Co., had overreported miles taxable at the rate of one cent by .753%; had underreported

miles taxable at the rate of one and one-half cents by 10.985%; and had underreported miles taxable at two cents by 4.83%.

They found that for the second quarter of 1960 the appellant, Emery Transportation Co., had underreported miles taxable at one and one-half cents by 3.669% and had underreported miles taxable at two cents by 9.817%.

The appellants do not contest these findings, or do they contest the amount of HUT assessed against them for the second quarter of 1960, which assessments were based on the audit of their books and records for the second quarter of 1960.

The appellants, however, do contest the assessments insofar that they involve any quarter other than the second quarter of 1960.

The pertinent provisions of Section 5728.08, Revised Code, the section which provides for the preparation and filing of highway use tax returns, reads as follows:

"Whoever is liable for the payment of the tax levied by Section 5728.06 of the Revised Code, shall, on or before the twentieth day of each January, April, July, and October, file with the treasurer of state, on forms prescribed by the tax commissioner, a highway use tax return and make payment of the full amount of the tax due for the operation of each commercial car and commercial tractor for the next preceding three calendar months. Provided that in the event two or more persons are jointly and severally liable for the payment of the tax on a given number of miles traveled, no person shall be required to pay the tax on said given number of miles traveled if said tax has been paid, or is currently being paid, by another. Nothing in this section shall be construed to relieve any person liable for the payment of the tax from the duty of filing returns showing the full amount of tax accrued by reason of the operation of any commercial car or commercial tractor owned, leased, rented, or otherwise operated by him. Nothing in this section shall be construed to limit the power of the commissioner to make assessments in accordance with

Section 5728.10 of the Revised Code, against any or all person or persons liable, in the event said tax is not actually paid or any deficiencies are found to be due.

"* * *"

The provisions of Section 5728.10, Revised Code, read as follows:

*"In the event any person required to file a highway use tax return* by the provisions of Sections 5728.01 to 5728.17, inclusive, of the Revised Code, fails to file such return within the time prescribed by such sections, *files an incomplete return, files an incorrect return, or fails to remit the full amount of the tax due for the period covered by the return, the tax commissioner may make an assessment against such person, based upon any information in his possession, for the period for which such tax was due.* The tax commissioner shall give the person against whom such assessment is made written notice of such assessment either by personal service or by registered mail. (Emphasis by B. T. A.)

"A penalty of fifteen per cent shall be added to the amount of assessment made pursuant to the provisions of this section. The tax commissioner shall have power to adopt and promulgate rules and regulations providing for the remission of penalties added to assessments made pursuant to the provisions of this section.

"Unless the person, to whom said notice of assessment is directed, within thirty days after service thereof, either personally or by registered mail, files a petition in writing, verified under oath by said person, or his duly authorized agent, having knowledge of the facts, setting forth with definiteness and particularity the items of said assessment objected to, together with the reasons for such objections, and posts bond satisfactory to the commissioner conditioned upon payment of the tax finally determined to be due, said assessment shall become and be deemed conclusive and the amount thereof shall be due and payable, from the person so assessed, to the treasurer of state. In every case where a petition for reassessment as above described, is filed, the tax commissioner shall assign a time and place

for the hearing of same and shall notify the petitioner thereof by registered mail, but the tax commissioner shall have the power to continue same from time to time as may be necessary. Upon satisfaction of the assessment, the bond shall be canceled or returned.

"Where any person has filed a petition for reassessment as provided in this section, the assessment as made by the tax commissioner together with penalties thereon shall become due and payable within three days after notice of the finding made at the hearing has been served either personally or by registered mail upon the party assessed.

"The person against whom such assessment has been made may appeal from the assessment after it is due and payable to the board of tax appeals in the same time, manner and form as that provided in Section 5717.02 of the Revised Code.

"After an assessment becomes conclusive a certified copy of the entry of the tax commissioner making the assessment final shall be filed in the office of the clerk of courts in the county in which the person's place of business is located or the county in which the person assessed resides, or if the person maintains no office in this state and is not a resident of this state in the office of the clerk of courts of Franklin county.

"The clerk of courts, immediately upon the filing of such entry, shall enter a judgment for the people of the state of Ohio against the person so assessed in the amount shown on the entry.

"From the date of the filing of the entry in the county clerk of court's office, the assessment, which includes taxes and penalty, shall bear the same rate of interest and shall have the same force and effect as other judgments. Execution shall issue upon such judgment upon request of the tax commissioner and all provisions of law applicable to sales on execution shall be applicable to sales under such judgment.

"All moneys collected by the tax commissioner under this section shall be paid into the state treasury in the

same manner as the revenues deriving from the taxes imposed by Section 5728.06 of the Revised Code.

"No assessment shall be made by the tax commissioner, as authorized by the provisions of this section, more than four years after the last day of the calendar year during which the tax was due. The provisions of this paragraph shall not bar an assessment against a person who failed to file a highway use tax return as required by this section."

It is noted that the authority given to the tax commissioner to make HUT assessments is somewhat comparable to that given to him to make sales and use tax assessments. However, there are several important areas of distinction, as noted below.

With respect to sales and use taxation there is a presumption set out in the statute which levies the tax (Sections 5739.01 and 5741.01, Revised Code) that all sales, use, storage or consumption of tangible personal property in this state are subject to taxation until the contrary is established. The statute which levies the HUT (Section 5728.-06, Revised Code) carries no presumption to assist the tax commissioner or to allow that official to make any assumptions as to the HUT liability of any motor carrier covered by the HUT law. The amount of the tax and the liability therefor must be ascertained from HUT returns or from books and records or from some other information that has come into the possession of the tax commissioner with respect to HUT liability *for a period in which the tax became due.*

With respect to sales tax there is also a provision of law (Section 5739.10, Revised Code) that permits the tax commissioner, in certain instances where the books and records of a taxpayer do not set out sufficient information to indicate a breakdown of amounts of taxable and nontaxable sales, to conduct a test check of the taxpayer's business and to apply the test check results to the receipts for the entire period for which the audit is being made. There is no such provision for a test check in any section of the law relating to HUT.

The assessments which were made by the Tax Commissioner on September 10, 1964, involved appellants' HUT returns for the following tax return periods:

| | | |
|---|---|---|
| 10-1-1959 | to | 12-31-1959 |
| 1-1-1960 | to | 3-31-1960 |
| 4-1-1960 | to | 6-30-1960 |
| 7-1-1960 | to | 9-30-1960 |
| 10-1-1960 | to | 12-31-1960 |
| 1-1-1961 | to | 3-31-1961 |
| 4-1-1961 | to | 6-30-1961 |
| 7-1-1961 | to | 9-30-1961 |
| 10-1-1961 | to | 12-31-1961 |
| 1-1-1962 | to | 3-31-1962 |
| 4-1-1962 | to | 6-30-1962 |
| 7-1-1962 | to | 9-30-1962 |
| 10-1-1962 | to | 12-31-1962 |
| 1-1-1963 | to | 3-31-1963 |

The only period audited by the Tax Commissioner by an inspection of the books and records of the appellants, was the period 4-1-1960 to 6-30-1960 and the appellants, as before noted, do not contest the assessment made against them for that quarter.

Not having made an audit for the other quarters it would appear from the record now before us that the only information that the Tax Commissioner had before him with respect to appellants' HUT liability for the other quarters was the information set out in the appellants' HUT tax returns for said other quarters. It further appears that appellants declined to sign and file amended HUT returns to reflect the Tax Commissioner's conclusion and assumption that if the appellants' tax returns for the second quarter of 1960 were incorrect, then the tax returns for the other periods were also incorrect and involved the same percentage of error.

It also is clear that the appellants, not having filed amended returns and not having paid the assessments, were not admitting any additional tax liability for the periods in question.

Counsel for the Tax Commissioner suggests that para-

graphs 4 and 5 of the stipulation are an admission and acknowledgement by the appellants that the tax returns of both companies for all the tax return periods were incorrect and that this acknowledgement constitutes all the information required to be in the possession of the Tax Commissioner so as to give that official the authority to make highway use tax assessments for the tax return periods here in question. However, the assessments here involved were made by the Tax Commissioner on September 10, 1964, and the stipulation was not filed with the Board of Tax Appeals until November 17, 1966, and there is nothing in the statutory transcript certified to the Board of Tax Appeals by the Tax Commissioner which would indicate, in any way, that on September 10, 1964, the Tax Commissioner was in possession of any information that appellants' tax returns were incorrect or incomplete, or that all the tax due from appellants' operation of motor vehicles on Ohio highways was not remitted to the state.

Under these circumstances it would seem that the statutory condition precedent to the right of the Tax Commissioner to make the complained of assessments was not present on September 10, 1964, and, in the absence of the filing of amended returns by appellants to reflect a greater tax liability for the tax return period or in the absence of the payment of additional assessments made by the Tax Commissioner, which acts would have constituted an acknowledgement by appellants that the additional taxes were due, the assessments were a nullity.

With respect to paragraphs 4 and 5 of the stipulation, it is further noted that appellants herein, even though admitting and conceding, that in all the highway use tax returns for all the periods involved, there was some overreporting and some underreporting of miles traveled over Ohio highways by their motor equipment, do not concede that by reason thereof the highway use tax due for any period was greater or different from that set out in the tax return filed for the period, except for the second quarter of 1960.

While some of the tax statutes authorize the method employed by the Tax Commissioner in this case, we are unable to find such authority in HUT. We recognize that a complete audit in the present investigation might be long and costly, but this would not justify our approval of the shortcut employed herein.

Giving effect to the observations and conclusions above noted, it is the decision of the Board of Tax Appeals that the final order of the Tax Commissioner must be, and hereby is, affirmed to the extent only that said final order confirms highway use tax assessments made against appellants for the second quarter of the calendar year 1960. It is the further decision of the Board of Tax Appeals that said final order must be, and hereby is, reversed with respect to the confirmance by the Tax Commissioner of the assessments involved in the other tax return periods here in issue.

I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation this day taken with respect to the above matter.

/s/ Arthur W. Moore, Secretary.

ZELLAR, dissenting. The audit by the Tax Commissioner completed for the second quarter of 1960 disclosed that appellants' records were incorrectly maintained and it would logically follow that the reports submitted from such records were also obviously incorrect. Appellants admitted the correctness of the Tax Commissioner's audit for this period and admits the same system of reporting was used throughout all quarters involved. The incorrect records maintained by appellants resulted from a substantial underreporting of mileage during the taxable quarters in question. These facts have been stipulated by the appellant.

The question to be determined is: May the Tax Commissioner apply and project the same percentage of error elicited in the audit for the second quarter of 1960 to the other quarters erroneously reported?

Section 5728.10, Revised Code, provides, among other things, that "In the event any person required to file a highway use tax return * * * files an incorrect return * * * for the period covered by the return, the tax commissioner may make an assessment against such person based upon *any* information in his possession for the period for which such tax was due." (Emphasis supplied by B. T. A.)

The information the Tax Commissioner has in his possession obtained after 2605 man hours of examination and auditing is:

1. Appellants' records were incorrect and manifested a consistent degree of error during the second quarter of 19600 which was the period audited.

2. He had the information reported by appellants in their returns which he knew were incorrect because of the improper system of reporting.

3. He knew the same practice of an underreporting of mileage was followed in the preparation of all returns included in the assessment at issue.

4. He had an admission from appellants that his audit for the second quarter of 1960 was correct, from which he logically concluded was representative of the degree of error applied and assigned to the other quarters in issue.

5. He knew the appellants used the same system of reporting during the subsequent quarters which are at issue.

All of this information was in the Tax Commissioner's possession and formed the basis for his assessment. From that information he determined that the appellants' erroneous practices, which were consistently followed in the preparation of all returns for the periods in issue, all of which returns the appellants acknowledged to be incorrect.

The Tax Commissioner, therefore, upon this information and upon this basis, applied and projected the same degree of error disclosed and revealed by the audit for the second quarter of 1960, to the returns of the subsequent quarters erroneously reported by the appellants.

It is the opinion of this member that this is a proper exercise of the statutory authority conferred upon him, as

expressly delegated by statute or necessarily implied from those powers so delegated. To find otherwise would be virtually telling the Tax Commissioner that he must make a complete audit of the records of appellants for each quarter and the langue of the Legislature, *i. e.,* "may make an assessment * * * based upon any information in his possession," is synonomous to the word "audit." I cannot concur in such an interpretation of this language. If a taxpayer fails to keep correct records, certainly some formula must be devised by, or be available to, the Tax Commissioner for him to determine the tax liability as established by the legislative authority if the Tax Commissioner is compelled to conduct a complete audit of each quarter to ascertain the incorrectness of a taxpayer's records. The maintaing of incorrect records by a taxpayer could inure to his own benefit because of the economic infeasibility and inordinate cost of such an audit. I think that such a requirement would be contrary to the legislative intent scribed in Section 5728.10, Revised Code, and is not in accord with the case of *Brockway* v. *Donahue,* B. T. A. case No. 59267, in which this board said:

"The appellant clams that an assessment 'based on any information in the Tax Commissioner's possession' can be made only if the appellant failed to have accurate records and only if the Tax Commissioner first determined that such failure had occurred.

"However, the existence or nonexistence of records, either accurate or inaccurate, is immaterial insofar as the authority of the Tax Commissioner to issue an assessment under the provisions of Revised Code Section 5728.10 is concerned. The Tax Commissioner's power and authority to act under this section has nothing to do with the existence or nonexistence of records. The Tax Commissioner's authority is derived solely from the fact that appellant filed inaccurate and incomplete returns. It is clear, from the statutory language, that any person liable for the payment of highway use tax who files an incomplete and incorrect return renders himself liable to an assessment based

upon any information in the Tax Commissioner's possession * * *."

The board also said that the taxpayer's failure to comply with the law had a twofold result:

"* * * Because of said failures (1) the Tax Commissioner was authorized to assess appellant based upon any information in his possession, and (2) the burden of proof was placed upon the appellant to show that his equipment did not travel the miles found by the Tax Commissioner."

In the instant case the appellants have acknowledged the incorrectness of the returns which they filed. Because of the incorrectness of those returns, it is the opinion of this member that the twofold result noted in the *Brockway case* is applicable.